Today's cases will be called as previously announced. The times will be as allotted to counsel. The first case today is number 152519, David Jackson v. John Marshall. Good morning Mr. Blank. Good morning. If it may please the court, I would ask for one minute in reserve. Yes. Thank you. This case is a 1993 murder conviction out of Massachusetts. And it's been around. And it's been up and down to this court and the Superior Court several times. What's concerning and what's puzzling is the fact that this is not a case that there is a factual dispute in terms of what was disclosed and what wasn't. There is an actual tape recording of a conversation with a prosecutor in Mass and a prosecutor in Oregon. Basically, and we've admitted it and it's been part of the record all along, that basically says, okay, you want him in Massachusetts, we'll release him on an Oregon case that involved lots of drugs. And they basically released him and sent him back to Massachusetts on his own and that was on tape. There was also a log from the prosecutor that said we were told to treat him, quote, nicely, unquote. That's in writing. That's also part of the appendix. So that was not disclosed. And there was no factual dispute that those items were not there and not disclosed. The defendant on his own and with a lot of perseverance started doing, after the trial was over, started doing record requests. And through a whole series of record requests and then a counsel being appointed, not myself, and then arguing motions for further discovery, including depositions of the district attorneys at the time, discovered that these items existed. That there was, one, a bail agreement. Two, that there was discussions with a prosecutor in Oregon. And three, discussions that said you should treat him nicely. Mr. Black, you have the challenge of carrying a burden here on this appeal. Of the arguments you're presenting, did the Massachusetts Supreme Judicial Court refuse to consider any of those arguments? They, first of all, they allowed my appeal to the civil justice. I got by the gatekeeper. Eventually three proceedings. Three proceedings and then it went to the Supreme Judicial Court. But if you look, and one of the things I argued, I also argued Judge Young did the same thing. If you read their opinions, both of them, they didn't mention the tape once. And Judge Young even said, I'm hamstrung by the Supreme Judicial Court's factual findings and the Supreme Judicial Court did not mention the tape or the note, or the nicely note. And also said it wouldn't have mattered anyway. I just want to point to the court that there's a case in front of the Supreme Court in the United States now called Turner v. United States, which has been briefed and argued on March 30th. The exact same issue, which was the fourth issue raised that they took on the cert petition, which was in a weak case involving impeachment evidence. How does it apply? How does Brady apply in that particular case? Our case is weaker. Our case is much weaker. We have this one witness. Let me bring you back to your point. Sure. Because I think you're making an important point in trying to say that it wasn't considered by the SJC. But when I look at the opinion, they expressly refer to the note. And then they say, they refer, in the case in which you are arguing the video, they say additional evidence suggesting the possibility that after the trial, Obinke's cooperation with Massachusetts May authorities may have been a factor in his receipt of lenient treatment in Oregon. How do we, under the standards, not read that as responsive to your argument that the note and the video should require a different result, which they then rejected, which we then have to give differentials? I don't think they considered the note or the video in a way that satisfies the standard or satisfies Brady. I just want to say that Mr. Obinke was one witness. And I also want to point out to the judge that not only did they fail to disclose, the important part is chapter 11, page 14 in my brief, where first of all, the district attorney stands up and says, there is no promise of rewards and inducements made to this witness, to the jury. I can tell you with certainty that there are none. The prosecutor says, no one in my office has not offered you anything, have they? Obinke, no, they did not. Has anyone promised you anything? No, they have not. Has anyone struck a deal with you? No, sir. And it goes on. And in closing arguments, he says it again. There is no promise of rewards and inducements, yet you have the treating nicely, yet you have the video. That is important on a witness who the first two weeks, I think he was charged with murder himself. I'm just trying to understand the argument. So ultimately it comes down to some showing of prejudice, right? So could you just explain how you can win, either under the, if we apply the deference to the prejudice ruling or if we don't. So take worst case for you, we have to defer to their prejudice ruling. Can you win and how? I can win, I can win because you have affirmative misrepresentations. And by the way, when he was to pose, the judge. But that's not going to help you with prejudice. You have one witness who says. That's not alone going to help you with prejudice. The thing not disclosed has to be prejudicial. So what is the account by which, if you had access to that thing, it would sufficiently undermine Oblinski's testimony? That it would be highly probable that they wouldn't have believed him? I believe that that's true. As Mr. Oblinski says, I was not promised anything. The defense lawyer just says now, listen, you were charged with 10 pounds of heroin in Oregon. How much time did you do? Nothing. What happened? I was released. He fled from Massachusetts and they released him on his own recognizance based on a Massachusetts prosecutor. Didn't you? Yes. So you are getting rewards and inducements. Yes. What if he says no? Well, I don't think he... It's not plausible. You think it just undeniably shows he got a reward or inducement. Well, let's say he says no. That would be great for the defense because then the defense takes the no. And so what about this? And then he takes the take. The premise here is that the inducement accounted for the testimony. In other words, he crafted testimony as a result of the inducement. Based on our decision in Perkins, though, how do you deal with the fact that he gave his account back on day one before the time when even you argue any inducement was even on the horizon? I don't think it was before anything. I think what happened was two weeks after this case, he went to the prosecutor on his own and started asking. And that's all in the facts section of the brief. Two weeks after this case, he went to the sergeant of the Boston police, I believe, and then just said, listen, I've got these cases in mass. Now, this they knew about, right? But I've got these cases in mass. Could you do something about it? And he worked with them from the beginning all the way through. And the Oregon stuff... But you knew about that during the trial. That they knew, yes. Right. And he, before, they didn't, as I understand it, correct me if I'm wrong, they made him no promises. He gave an account of the events without any promises. That's what the prosecutor says. Well, there's no evidence to the contrary in terms of the original interaction between him and law enforcement. Well, I mean, what you're saying, I understand what you're saying. And he testified that there were no promises. And you're saying that there's no evidence of that. But we find out later, certainly, that there were promises made in Oregon. Are you saying later on? Or are you saying at the time? Pretty soon after. Yes, later on, to answer your question. Can I ask just one last question about that? Sure. What am I to do with the... I mean, I guess it's at most, and this doesn't mean it's not enough, but an inference that the treatment he received in Oregon was for the cooperation and for certain testimony. Well, it was. I mean, the tape, actually, the tape, if you look at the tape, listen to the tape, the prosecutor says, we were informed that this person is a witness and needs to be in Massachusetts, and we need to get him there, and therefore, we're going to drop the big drug case in Oregon. I mean, it's pretty clear, and I think you could... Isn't that different than for cooperation with the testimony? It is true that they need him to be there. I believe the whole note with the nicely and the whole... So you're just saying it's inferential. It's not a case where there's an actual agreement where in return for his cooperation, you decided to drop X, which is sometimes agreements that exist. We don't have that here. We do not have that agreement. Okay. Thank you. Good morning, Ms. Reardon. Good morning, Your Honors. Suzanne Reardon, Assistant Attorney General, on behalf of the respondents. I think the important thing to remember in this case is, as Your Honors mentioned, Olbinski's testimony was consistent from two months after the crime throughout. Let me ask you something. Did you have any other evidence on Olbinski in this case? It was circumstantial evidence, Your Honor. It was after the crime, the petitioner went to a friend's house and had a long, dark jacket. The only alleged eyewitness was Olbinski? The only witness to place him at the scene, yes. And he was charged also? He was also charged with murder. With first degree murder? Yes. What was the reason why his charges were dropped after the case? Does the record show? The record shows that the judge found the evidence insufficient for the indictment and allowed the motion to dismiss. The Commonwealth relied on the grand jury indictments, did not really argue, just said we rely on the grand jury minutes. The Commonwealth didn't oppose the motion, am I correct? I would say it didn't oppose, but it didn't really argue against it. Is there a difference? I guess not really. But in terms of the Oregon charges... There was no physical evidence? No physical evidence against the defendant. No other than that he came to his friend's apartment with money and cocaine shortly after the crime and admitted the next day to one of his friends that he was involved in the incident. What do you feel is the significance, if any, of the statements made by the prosecuting attorney concerning Olbinski, particularly in the closing argument? About the fact that he didn't get a reward or inducement? Well, I think throughout this case and through discovery, depositions, the petitioner really has never been able to show that there was an actual agreement with Olbinski regarding his testimony. Yes, I mean, it was brought out to the jury during cross-examination that he was indicted for murder and faced charges for murder. They attempted to get in the fact that he had other charges in Oregon, but the judge didn't allow that in at trial because the Oregon charges came after his initial statement. And the Oregon charges, again, came after the statement that he had made initially and that was consistent with his trial testimony. And there's no evidence that Olbinski actually knew. There may have been some conversation between the Massachusetts prosecutor and the Oregon prosecutor. What do you mean there may have been? Isn't there a tape? Okay, I agree there was, but we don't know that Olbinski knew about that or that he testified. Well, it doesn't make a difference whether Olbinski knew it, does it? Well, yeah, I think we have to... The difference is whether the government made misstatements to the jury as to the situation. Well, I think there's a difference between an agreement between prosecutors and an agreement with Olbinski that he will cooperate with the government in exchange for favorable treatment in Oregon. There's no evidence that that occurred, that he made an agreement with the prosecutor that I will testify for you in exchange for favorable treatment in Oregon. Do you believe that... What is your position? Let me put it that way. As to these conversations between Massachusetts and Oregon, were they subject to Brady disclosure? Or should they have been? I don't think so. I mean, like I just explained, I think it has to be an agreement where it's clear that the witness had an agreement with the prosecutor that he will testify in exchange for treatment, and an agreement between the prosecutors that he was needed for testimony in Massachusetts I think is one step removed from Brady. You don't believe that would have been helpful in cross-examination of Olbinski? Again, the defense counsel at trial tried to get in the fact that he had charges pending in Oregon and that wasn't allowed in. If you add to that that they had conversations, that would have been helpful. It may have been helpful, but I don't think it was. It rises to the level, again, we're under habeas here, that it was an unreasonable application of Brady for the SJC to find that there wasn't a reasonable probability that it would change the outcome. Unless your honors have any further questions, I will rest the mic. I probably have if you keep on talking. Then I'll stop. Thank you. The case against Olbinski was dismissed, the murder case, two weeks after this case was over. It was continued seven times. So this is a classic case where the government kept on continuing it, continuing it, continuing it, continuing it. Oh, he testified. So Wendell McCarthy, insufficient evidence, will dismiss the case. There was no opposition. He didn't oppose the motion and there was no physical evidence. He fled the jurisdiction after there was a war in Massachusetts for this case and they let him out in Oregon because of the prosecutor talking to him from Massachusetts. Do you want us to find that there's plenty of evidence that they went easy on him or do you need us to find that they had a deal with him that if he testified a certain way, they would go easy on him? How far down that do you need us to go? It's just to me unimaginable that there was no deal on the books with this case. He was let out in Oregon. The murder case was dropped right after he testified. His incentive was there. And yes, the defense counsel could have taken this case and really jammed it down his throat. Can I ask a procedural question? I don't fully understand how we're supposed to think about Brady. So you have a certain amount of evidence that wasn't disclosed. Let's say that quantum of evidence itself isn't obviously on its own prejudicial, but if you had it, most likely you would have done further discovery and developed a case off of it. And that's not all of what you're saying, but the thrust of what you're saying is in part, it's unimaginable there's not a deal. The more people I had to ask, the more likely that I would have developed a deal. Is any of that relevant on Brady? In other words, are we supposed to just look at you've identified X amount of evidence that wasn't disclosed. The courts have looked at it as we look at that X amount of evidence and we see would that have affected a jury. Another way of thinking about it is there's X amount of evidence which, if it had been known, any good lawyer might have developed into Y. But I take it that's irrelevant for Brady, right? We just are supposed to look at the particular thing that wasn't disclosed. And if that's not enough, that's just the way it is. Is that right? I agree with you. And Petitioner's trial counsel admitted in the closing that he had no evidence of promises and inducements. He said this, but he also said that I just, the difference between arguing, I think something's going on here, which is essentially sort of what he did. I mean, basically he was sort of the come on argument to him as he was cross-examining versus. So the significance of it to you is that if the theory was they must have done something with respect to the murder charges, they must have been doing a deal. They did. But you didn't have any proof of that and he has to acknowledge he has no proof of that. If I had, in addition to present to the jury, and look, I now have them on tape saying we've been talking to prosecutors to do something about the Oregon charges, that's going to make the case that there was an underlying inducement with respect to the murder charge originally much stronger. Absolutely. Okay. Thank you. Thank you.